GREYHOUND COMPUTER CORPORATION ET AL. *v.*
STATE DEPARTMENT OF ASSESSMENTS
AND TAXATION

[No. 203, September Term, 1973.]

*Decided May 29, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Jerry M. Hamovit,* with whom were *Lipman Redman, Joel Z. Silver, Melrod, Redman & Gartlan, Marvin J. Garbis* and *Allen L. Schwait* on the brief, for appellants.

K. Donald Proctor, Assistant Attorney General, with whom was Francis B. Burch, Attorney General, on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

In this appeal from the Maryland Tax Court, Greyhound Computer Corporation (Greyhound) challenges an order of the tax court which affirmed an assessment of $1,501,350.00 imposed for the tax year 1970-71 by the State Department of Assessments and Taxation (the Department) on four computer systems owned by Greyhound and leased to Bendix Corporation at Towson, Maryland.[1] A second appeal in the same record is that of LMC Leasing Corporation (LMC) which contests the validity of a similar assessment of $1,932,170.00.[2] Because the issues relating to both cases are identical, this opinion will deal primarily with Greyhound.

The only issue in the case was the extent to which computer software [3] — programs, educational services, and

---

1. International Business Machines Corporation, the manufacturer of the equipment, had charged Greyhound approximately $2,646,000.00 for both the data processing equipment ("computer hardware"), and the programs and educational and engineering service ("computer software"). When the sale was made, it was the manufacturer's policy to "bundle" the cost of hardware and software. This policy was changed, commencing in June of 1969, when some software was "unbundled" from hardware.

2. Both appeals are siblings of State Dep't of Assessments & Taxation v. Greyhound Computer Corp., 271 Md. 575, 320 A. 2d 40 (1974), in which the same parties, the same computers, but different issues, were involved.

3. "After hearing the evidence in this case the first finding the court is constrained to make is that, in the computer age, lawyers and courts need no longer feel ashamed or even sensitive about the charge, often made, that they confuse the issue by resort to legal jargon, law Latin or Norman French. By comparison, the misnomers and industrial shorthand of the computer world make the most esoteric legal writing seem as clear and lucid as the Ten Commandments or the Gettysburg Address; and to add to this Babel, the experts in the computer field, while using exactly the same words, uniformly disagree as to precisely what they mean. Such being the state of the art, the court concludes that . . . it should make at least a preliminary attempt at computer definitions.

* * *

"Perhaps the best recognized and most easily understood dichotomy in the trade is between 'hardware' on the one hand and 'software' on the other, and even here the experts do not always agree as to whether a particular item falls in one category or the other. Generally speaking, 'hardware' refers to the naked, tangible parts of the machinery itself, while 'software'

systems engineering services — which had been "bundled" in the cost of the computers, purchased by Greyhound or LMC from International Business Machines Corporation (IBM) and leased to others, is tangible personal property, subject to assessment, at full cash value, and taxation under Maryland Code (1957, 1969 Repl. Vol.) Art. 81, §§ 8 (2), 14 (b) (2).[4]

Greyhound rests its challenge on three arguments:

(i) Software is not tangible personal property subject to tax;

(ii) The Department may not assess software

---

denotes the information loaded into the machine and the directions given to the machine (usually by card or teleprompter) as to what it is to do and upon what command. 'Software' is also frequently used to include 'support' — that is, advice, assistance, counseling, and sometimes even expert engineering help furnished by the vendor in loading the machine for a certain program such as inventory control or preparation of payroll." Honeywell, Inc. v. Lithonia Lighting, Inc., 317 F. Supp. 406, 408 (N.D. Ga. 1970).

4. Maryland Code (1957, 1969 Repl. Vol.) Art. 81, § 8, provided in pertinent part for the tax year here involved:

"The following property, except as in §§ 9 and 10 provided, shall be subject to assessment to the owner (except shares of stock which shall be subject to assessment to the issuing corporation) and taxation for ordinary taxes in this State and in the county and/or city specified below:

* * *

"(2) *Tangible personal property.* — All tangible personal properties located in this State, by whomsoever owned, including that owned or leased by the United States, or any department or agency of the United States, to the fullest extent possible under the Constitution of the United States and laws of the United States pursuant thereto and in conformity therewith, in the county and/or city in which the same are respectively permanently located, provided that tangible personal property located in this State, and not permanently located in any county or city, shall, except as provided in paragraph (4), be subject to taxation in the county and/or city in which the owner resides . . . ."

Code (1957, 1969 Repl. Vol.) Art. 81, § 14 (b) (2), provided:

"(2) All personal property directed in this article to be assessed, shall be assessed at the full cash value thereof on the date of finality. The term full cash value as used in this subsection shall mean current value without any allowance for inflation."

For a history of personal property taxation in Maryland, see 1957 Report, Maryland Legislative Council, Committee on Taxation and Fiscal Matters.

—having substantial value—as if it were tangible personal property merely because certain elements of the software have been placed upon or relate to certain tangible items like cards or magnetic tapes which have insignificant value; and

(iii) The tax court's finding that "software" was not severable from, and was an integral part of, hardware is unsupported by substantial evidence.

Because we have concluded that there is a legal infirmity in the result reached by the tax court, we shall deal only tangentially with these contentions.

The tax court seems to have had no difficulty in affirming the Department's assessment which had been based on the purchase price paid IBM for a "bundle" of computer hardware and software, less an appropriate allowance for depreciation. The court noted that the data processing equipment — computer hardware — was inoperable without the programming and services — the software — which were a part of the package. The court also found that the value of the software had not been separately recorded on Greyhound's books.

As a result, the only estimate of the value of the software came from Walter Misdom, a consultant in the field of computer market research, who was the only witness. Mr. Misdom testified that when IBM in 1969 abandoned its policy of bundling hardware and some of the software, the sale price of its computer hardware dropped about 3%. However, by utilizing what he estimated IBM's budget allocations for the year 1968 to have been, he concluded that about 33% of the purchase price paid IBM by Greyhound was properly allocable to software. The tax court concluded, however, that the software was simply not severable from the hardware for purposes of assessment.

What is troublesome about this approach is the fact that while a substantial portion of the software is of a tangible nature, *i.e.*, punched cards, magnetic tapes, instructions covering operation or applications, and thus might well be subject to assessment and taxation under Code (1957, 1969

Repl. Vol.) Art. 81, § 8 (2), the remainder consists of personal services to be rendered after purchase which were characterized by the tax court in this manner:[5]

> "*SYSTEMS ENGINEERING SERVICES*: services provided by the software developer to evaluate and meet the problem solving needs of electronic data processing equipment, including the preparation of feasibility studies, systems analysis and design services, the planning and writing of basic operations programs and application programs, and the debugging testing documentation development and the improvement of these programs.

> "*EDUCATIONAL SERVICES*: training and instruction in the use of electronic data processing equipment provided to the user thereof, such as on site education, classroom instructions and educational publications.

> "*MAINTENANCE*: tests, measurements, replacements, adjustments and repairs intended to keep data processing equipment in satisfactory working condition."

A tenable argument may be made in support of the notion that at least that part of the tangible software which constitutes the operational program, without which a computer cannot operate, may have a value far in excess of that of the cards and tapes themselves, a value which represents large amounts expended by the manufacturer before the sale could take place for research, development, engineering, and the acquisition of expertise and skills.[6] So much of the software as consists of services to be rendered after the purchase is not only intangible in nature, but is beyond the reach of Code (1957, 1969 Repl. Vol.) Art. 81, § 11

---

5. These characterizations were contained in a stipulation of facts submitted to the tax court by Greyhound and the Department.

6. The Supreme Court of the United States, in Gottschalk v. Benson, 409 U.S. 63 (1972), held that a program for a digital computer was not patentable under federal law at the time the case was decided.

(c),[7] dealing primarily with the taxation of intangibles, which generally permits only the taxation of bonds, certificates of indebtedness or evidence of debt owned by certain corporations. However, it cannot be ascertained from the record before us that portion of the purchase price attributable to such of the software as is tangible, or that portion attributable to that which is intangible.

The difference between the two categories can best be delineated by a simple illustration. A privately commissioned recording, with no restriction on use, of a symphony played by a noted orchestra, has a value far in excess of that of the plastic disc or tape on which it is recorded, and would be subject to assessment for tax purposes at its full cash value. A privately commissioned performance of the same symphony by the same orchestra, however, although it might entail the same expenditure, would produce nothing tangible that could be reached by a tax on personal property.

Another apt analogy may be found in *Michael Todd Co. v. County of Los Angeles*, 57 Cal. 2d 684, 371 P. 2d 340, 21 Cal. Rptr. 604 (1962), where the Supreme Court of California held that the assessment, for purposes of a tax on tangible personal property, of the negatives of the motion picture

---

7. Code (1957, 1969 Repl. Vol.) Art. 81, § 11 (c), provides:

"All interests, shares and proportions, owned by such corporation and not subject to ordinary taxes under any other provisions of this article, . . . all bonds, certificates of indebtedness or evidences of debt, owned by such corporation and not subject to ordinary taxes under any other provision of this article, in whatsoever form made or issued by any public or private corporation or made or issued by any state, territory, district, possession or foreign country, all mortgages, owned by such corporation and not subject to ordinary taxes under any other provision of this article, all shares of stock or shares in any corporation, owned by such corporation and not subject to ordinary taxes under any other provision of this article, and all other investments in any corporation including advances to any corporation, owned by such corporation and not subject to ordinary taxes under any other provision of this article, shall be subject to assessment to such corporation and taxation for ordinary State and county and/or city taxes in the county and/or city in which the principal office of such corporation in this State shall be located, except taxes thereon from which such corporation is entitled to exemption under such contract."

"Around The World In Eighty Days" was not limited to the value of the film on which it had been recorded, in a case where possession of the negative was coupled with a right of reproduction. *See also District of Columbia v. Norwood Studios, Inc.*, 336 F. 2d 746 (D.C. Cir. 1964). For a challenge to this analogy, *see* Heinzman, *Computer software: Should it be treated as tangible property for ad valorem tax?*, 37 J. Taxation 184, 185-86 (1972).

The problem posed by this case is of relatively recent vintage, encountered with increasing frequency in a rapidly expanding field, Bryant & Mather, *Property Taxation of Computer Software*, 18 N.Y.L.F. 59 (1972). While most states permit some form of taxation on business personal property, policies with respect to the taxation of intangibles vary widely, because such a tax is less uniformly imposed than a tax on tangibles, Bryant & Mather, *supra*, 18 N.Y.L.F. at 59-61.

It appears that the few courts which have dealt with the taxation of computer software have rejected the idea that software can be reached by a tax on tangible property, *District of Columbia v. Universal Computer Associates, Inc.*, 465 F. 2d 615 (D.C. Cir. 1972).[8] *See also County of Sacramento v. Assessment Appeals Bd.*, 32 Cal. App. 3d 654, 671, 108 Cal. Rptr. 434, 446 (1973), where the court remanded the cases in order that revaluations of data processing systems be made for purposes of assessing a property tax against the lessor of those systems, excluding the value of "service or 'software' intangibles."

Since 1972, California has, by statute, provided for the valuation, for tax purposes, of storage media, *i.e.*, punched cards, tapes, discs or drums, for computer programs as if there were no programs on such media except basic operational programs. Cal. Revenue & Taxation Code § 995 (West Supp. 1974), provides in part:

"Storage media for computer programs shall be valued . . . as if there were no computer program on

8. Greyhound also referred us to a Florida trial court decision and an Ohio Board of Tax Appeals case.

such media except basic operational programs. Otherwise, computer programs shall not be valued for purpose of property taxation.

\* \* \* "

Application programs, *inter alia,* are specifically exempt from valuation for purposes of property taxation.[9] *See* Cal. Revenue & Taxation Code §§ 995, 995.1, 995.2 (West Supp. 1974).

We note that the Internal Revenue Service permits a taxpayer to differentiate between hardware and software for purposes of depreciation. Rev. Proc. 69-21, 1969-2 Cum. Bull. 303, provides in part:

"Sec. 4. Costs of Purchased Software.

"0.1 With respect to costs of purchased software, the Service will not disturb the taxpayer's treatment of such costs if the following practices are consistently followed:

"1. Where such costs are included, without being separately stated, in the cost of the hardware (computer) and such costs are treated as a part of the cost of the hardware that is capitalized and depreciated; or

"2. Where such costs are separately stated, and the software is treated by the taxpayer as an intangible asset the cost of which is to be recovered by amortization deductions ratably over a period of five years or such shorter period as can be established by the taxpayer as appropriate in any particular case if the useful life of the software in his hands will be less than five years."

This leads us to believe that the tax court erred, as a matter of law, when it decided that the cost of the software

---

**9.** County of Sacramento v. Assessment Appeals Bd., 32 Cal. App. 3d 654, 108 Cal. Rptr. 434 (1973), involved a tax year prior to the enactment of the statutes.

was inseparable from that of the hardware, and, on this premise, determined to affirm an assessment based on the aggregate purchase price, less depreciation, which was designed to establish the full cash value mandated by Code (1957, 1969 Repl. Vol.) Art. 81, § 14 (b) (2).

We recognize that the burden of showing error in the assessment was Greyhound's, *Fairchild Hiller Corp. v. Supervisor of Assessments*, 267 Md. 519, 523, 298 A. 2d 148, 150 (1973). Certainly Mr. Misdom's testimony in this area provided scant predicate for an incisive factual determination. There was testimony, however, that some software can now be purchased separately, so that it may well be possible to establish the cost of a software package comparable to that provided by IBM, and then to allocate that cost between the tangible property which is acquired and the services which are to be rendered.

We shall therefore remand the cases in order to give Greyhound and LMC an opportunity to establish by competent evidence, the cost or value of the several items of software, leaving to the tax court the determination of a proper assessable basis for the tangible software.

> *Tax Court Case TP-C 356, Greyhound Computer Corporation v. State Department of Assessments and Taxation,*
>
> *and*
>
> *Tax Court Case TP-C 359, LMC Leasing Corporation v. State Department of Assessments and Taxation, remanded as permitted by Maryland Rule 871 a, without affirmance or reversal, for further proceedings.*
>
> *Costs of this appeal to be paid by appellants.*