No. 58,619

In the Matter of the Protest of THOMAS D. STRAYER, CPA, for Taxes Paid in the Year 1982 in Graham County, Kansas.

(716 P 2d 588)

Opinion filed March 28, 1986.

*Allen Shelton*, of Clark & Shelton, P.A., of Hill City, argued the cause and was on the brief for appellant Thomas D. Strayer.

*Steven E. Worcester*, county attorney, argued the cause and was on the brief for appellee Graham County.

The opinion of the court was delivered by

LOCKETT, J.: Taxpayer appeals the decision of the Graham County District Court upholding a ruling of the Kansas Board of Tax Appeals which determined that computer software was taxable as tangible personal property.

The appellant, Thomas D. Strayer, is a certified public accountant. In November of 1981, Strayer purchased a computer from Computax Systems, Inc. Additionally, Strayer executed a licensing agreement with Computax at a cost of $7,010. The agreement provided for the use of certain computer software programs. Annual renewal of the license agreement cost one-half of the initial fee. The agreement required Computax to update the software as needed during each year and to provide other services. The bulk of the annual fee paid for the use of an income tax preparation software program.

Under the agreement, the software program and later updates

are shipped by Computax on eight-inch floppy disks. Since the disks wear out through usage and are subject to damage, Strayer may make as many copies of these disks as he needs before returning the originals to Computax.

In 1982, Strayer listed the computer for personal property tax assessment, but did not list the software programs. The Graham County Assessor asked to see invoices regarding the purchase, noted the initial fee charged for the software and insisted that the software was subject to personal property tax assessment. Personal property taxes were assessed, using the initial licensing fee paid as the market value. Strayer paid that portion of the 1982 taxes attributable to the software under protest and filed an application for refund of those taxes with the Board of Tax Appeals.

The Board of Tax Appeals determined that computer software was tangible personal property, subject to personal property taxation, and that since title to the software remained with Computax, Computax was liable for the personal property taxes. Computax's license agreement with the program utilizer requires him to reimburse the company for the tax assessed, and to challenge any taxation.

A statement of background is necessary for a general understanding of the technical aspects of the case. A functioning computer is a combination of hardware and computer programs, sometimes called "software." The electronic data processing industry is made up of a number of companies which offer numerous types of products and/or services to users of electronic data processing equipment. The data processing equipment is often referred to as computer hardware. Computer programs are the instructions which make the data processing equipment perform tasks and include "operational programs," which orchestrate the basic functions of the computer, and "application programs," which provide the particularized instructions adapted for specialized programs.

Computer software was traditionally viewed as an integral part of the computer hardware unit until 1969, when IBM announced that it would price its hardware separately from its software and services. Due to the uncertain nature of the software and the inexperience and lack of skill of both taxpayers and state assessment agencies in classifying software, local taxing authorities

and taxpayers have been in conflict since that date over whether software constitutes tangible personal property or intangible intellectual property. Annot., 82 A.L.R.3d 606 § 2.

Following the IBM announcement, the Internal Revenue Service promulgated Rev. Proc. 69-21 § 3, 1969-2 C.B. 303, which provided guidelines for IRS agents in the tax treatment of computer software. Rev. Proc. 69-21 stated:

"The costs of developing software (whether or not the particular software is patented or copyrighted) in many respects so closely resemble the kind of research and experimental expenditures that fall within the purview of Section 174 of the Internal Revenue Code of 1954 as to warrant accounting treatment similar to that accorded such costs under that section."

Section 174 provides that a taxpayer may elect to treat development costs as current expenses or as a capital expenditure. Rev. Proc. 69-21 § 4, however, pointedly identifies all software as intangible. Note, The Revolt Against the Property Tax on Software: An Unnecessary Conflict Growing Out of Unbundling, 9 Suffolk U.L. Rev. 118, 131 (1975).

The taxpayer here, relying on the case law from our sister states, contends that computer software is intangible personal property and not subject to the Kansas personal property tax placed upon tangible personal property. The County contends that, under Kansas statutes, computer software is not classified as intangible property and is, therefore, taxable as tangible personal property.

Almost all states which have considered the nature of computer software have found that the software is intangible personal property. This is generally based on the idea that the information contained on the software is the product being sold, that this information can be transmitted in many forms, including over the telephone, and that the information often becomes outdated and must be replaced. Only one state has found that software is tangible personal property, but the appellate court noted it could not determine from the record how to apportion the purchase price between operational and application functions of the software.

One of the first cases discussing this issue was *District of Columbia v. Universal Computer Assoc., Inc.*, 465 F.2d 615 (D.C. Cir. 1972). The District of Columbia Tax Court had held that certain computer software represented intangible values and was not subject to personal property tax. The software

consisted of two sets of punched cards, one set containing the standard program developed by IBM to run the computer and one set containing a special tax program. The material of the punched cards themselves was of insignificant value. It was for the intangible value of the information stored on the cards that Universal was charged. How the information was created, who had title, and how the information was put on the computer—all supported the court's conclusion.

In *Commerce Union Bank v. Tidwell,* 538 S.W.2d 405 (Tenn. 1976), the State argued that the purchase of consumer software was analogous to the purchase or lease of a motion picture film. The court distinguished the computer software from motion picture films, noting that the latter constituted an end product without which the labor, skills and thought processes which went into its creation would prove meaningless. Absent the film, the taxpayer had nothing. The computer tapes and cards, however, were not a finished product. It was the information they contained which constituted the valuable resource.

In *First National Bank v. Dep't of Revenue,* 85 Ill. 2d 84, 421 N.E.2d 175 (1981), the Illinois court said that the test to determine whether property is tangible is whether the tape is the substance of the transaction or merely incidental to a service. The Illinois bank purchased the software as a means of programming its computer so that it could perform functions the bank needed to have performed. The tapes were certainly not the only medium through which the information could be transferred. In this way, the tapes differ from a movie film, a phonograph record or a book, whereby the media used are the only practicable ways of preserving those articles. Thus, while those articles and the tapes are similar in that they physically represent the transfer of ideas or artistic processes, a more significant distinction is that those articles are inseparable from the ideas or processes, whereas computer programs are separable from the tapes. Bryant & Mather, *Property Taxation of Computer Software,* 18 N.Y.L.F 59, 67 (1972). It was not the tapes but the information which was the substance of the transaction.

Missouri reached a similar conclusion in *James v. Tres Computer Service, Inc.,* 642 S.W.2d 347 (Mo. 1982). It concluded that the tapes used for the programs were not the ultimate object of the sale and that it was not necessary that the information

purchased be put on tape for it to be transmitted to the user. It said that the presence of the data on the tapes is merely an incidental physical commingling of the tangible tapes and the intangible information which is actually the subject of the transaction. It concluded that if the tapes serve only to convey the computer data and then are discarded, the value of the professional services is not considered taxable as tangible personal property.

In *Maccabees v. Treasury Dep't,* 122 Mich. App. 660, 332 N.W.2d 561 (1983), the court noted, in holding that the software was intangible personal property, that any tangible personal property attendant to software is inconsequential because software can be entered into a computer via telephone lines; communications media, such as punched cards and tapes, are transitory and are destroyed or reused after the software is entered into a computer; the software program exists as imperceivable binary pulses; and the tangible communications media has little or no value apart from the program. It said the focus of the transaction is on the personalized service of the software vendors, an intangibles transaction.

Alabama held that computer software was intangible personal property in *State v. Central Computer Services, Inc.,* 349 So. 2d 1156 (Ala. App. 1977). The court concluded that it was the knowledge, the information contained on the tapes, which was the main characteristic of the software, and such information was intangible property.

Maryland is the only state to find that computer software is tangible personal property. In *Greyhound Computer v. St. Dep't,* 271 Md. 674, 320 A.2d 52 (1974), 82 A.L.R.3d 597, the court considered whether computer software—programs, educational services, and systems engineering services—which had been "bundled" in the cost of computers purchased by Greyhound and another company from IBM and leased to others was tangible personal property.

The State's major contention in that case was that even if software were severable from the hardware and even if a separate price could be established for it, these items still constituted tangible personal property since the value of an article consisted, in large part, of the cost and skill used in producing it and not primarily of the cost of the material from which it was made. The

court could not determine from the record what portion of the purchase price was attributable to such of the software that was "systems software" or what portion was attributable to "applications software."

California has taken a different approach to the problem. The state legislature has amended the state's tax code so that software is divided into two types—systems software and application software. Cal. Rev. & Tax Code §§ 995, 995.2 (West 1986 Supp.). Only the basic operational programs are taxed on the theory that taxation of application programs would be detrimental to research and an expansion of business activity within the state.

The power to levy taxes is inherent in the power to govern, but the exercise of that power is dependent upon the existence of legislation designating the kinds of property to be taxed and nothing is taxable unless clearly within the taxing statute. *Robbins-Leavenworth Floor Covering, Inc. v. Leavenworth Nat'l Bank & Trust Co.*, 229 Kan. 511, 625 P.2d 494 (1981). Tax statutes are penal, and thus must be strictly construed in favor of the taxpayer. *J. G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, 680 P.2d 291 (1984). The liberal construction rule for statutes is subject to the principle that all rules of statutory construction are merely for the purpose of ascertaining the intention of the legislature as expressed in the statute. A liberal construction of a statute does not permit the courts to read into a statute something that does not come within the wording used in the statute. But, statutes must be construed with reason, considering the practicalities of the subject matter addressed. *Anderson v. Overland Park Credit Union*, 231 Kan. 97, 643 P.2d 120 (1982).

Using the rules of statutory construction, can we determine from the Kansas statutes whether the legislature intended computer software programs to be taxed as personal property or fall within the definition of intangible property?

K.S.A. 79-101 provides for the taxation of all property in the state. K.S.A. 1985 Supp. 79-201 describes what property is exempt from taxation. Generally, the legislature has the authority to provide that property other than that named in the Kansas Constitution may be exempt from taxation, but this exemption must have a public purpose and be designed to promote the public welfare. *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 542 P.2d 278 (1975). Computer software is not included

in this listing and therefore must be either: (1) tangible personal property subject to the personal property tax; (2) intangible property; or (3) a mixture of personal property and intangible property, depending upon the character or function of the particular software program.

K.S.A. 79-102 defines personal property to include every "tangible" thing other than real property which is the subject of ownership. The legislature has not defined "tangible." K.S.A. 79-301, 79-303, 79-304 and 79-306 discuss the listing of "tangible" personal property for the purposes of taxation.

"Tangible" is not defined in the statutory sections dealing with personal property taxes. It is defined in K.S.A. 1985 Supp. 79-3602(f), the sales tax section, as "corporeal personal property." Corporeal is not defined in the statutes. Black's Law Dictionary 310 (5th ed. 1979), defines corporeal as:

"A term descriptive of such things as have an objective, material existence; perceptible by the senses of sight and touch; possessing a real body."

Under the intangibles tax law, K.S.A. 1985 Supp. 12-1,101, intangibles are defined as "money, notes and other evidence of debt." K.S.A. 12-1,102(a) defines money to include gold and silver coin, United States treasury notes, and other forms of currency. Notes and other evidence of debt are defined in 12-1,102(b) to include stock certificates, notes, bonds, debentures, claims secured by deed, liquidated claims and demands for money, accounts receivable, and all written instruments, contracts or other writings evidencing, calling for, or fixing or showing a fixed obligation. There are other forms of intangible property, such as good will, franchises, patents, copyrights and trademarks which are not listed within the statutes.

K.S.A. 84-9-106 of the Uniform Commercial Code defines "general intangibles" as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money." The Kansas Comment 1983 under 84-9-106 defines two key types of "intangibles." The first type is "account" and the second "general intangibles." The term "general intangibles" continues as a catch-all to pick up collateral which does not fit any other Article 9 category. It includes, for example, a tax refund, *computer software*, patent rights, trademarks, goodwill, a vendor's interest in an installment land contract, certain partnership interests in commercial real

estate, and other offbeat intangible collateral. "When the secured party is not sure how to categorize collateral, he should assume that it qualifies as a general intangible, and file accordingly." K.S.A. 84-9-106, Kansas Comment 1983.

For the most part, software has come into existence since the tax statutes in this state were written. The fact that the legislature has designated that certain property be taxed under the intangibles tax does not mean that there are no other types of intangible property or that all other types of property must thus be tangible. Whether computer software should be treated as tangible personal property subject to the personal property tax or as intangible personal property not subject to the tax must be determined with reason, considering the practicalities of the subject matter addressed.

Using the guidelines for statutory construction, we determine that under the tax statutes, software programs which constitute the operational programs, without which a computer cannot operate, have a value that is to be considered an essential portion of the computer hardware and are therefore taxable as tangible personal property in conjunction with the hardware. Application programs, those which are particularized instructions adopted for special programs, are intangible property not subject to the personal property tax for tangible property.

It is held that the tax program obtained by the taxpayer under the licensing agreement was composed of particularized instruction for the computation of taxes, and thus was an application software program. Application programs are intangible property and not subject to the personal property tax on tangible property.

Since we have determined that the tax program is an application software program, *i.e.*, intangible property, we need not discuss other issues raised by the taxpayer.

The decision of the district court is reversed.