347 P.2d 177

Roderick W. McKENDRICK, d/b/a Salt Lake Artificial Limb Company, Plaintiff,

v.

STATE TAX COMMISSION of The State of Utah, Defendant.

No. 9035.

Supreme Court of Utah.

Nov. 30, 1959.

Alan H. Bishop, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Gordon A. Madsen, Asst. Atty. Gen., for respondent.

CROCKETT, Chief Justice.

Review of decision of the Tax Commission assessing deficiency of $345.28 as the 2% state sales tax on plaintiff's sales of artificial limbs, which the Commission held to be "retail sale of tangible personal property." [1]

Plaintiff's position is that what he sells is in essence a professional service in making the artificial limb and in fitting it to and training the user, comparable to furnishing such other personal aids as dental plates and artificial eyes; and that the materials used represent such a small portion of the total charge that they are "merely incidental" so the transaction should not be subject to sales tax. He relies on Young Electric Sign Co. v. Utah State Tax Commission.[2]

We do not regard the case cited as controlling here. There the charge made to the customer was in connection with furnishing electric signs. The ruling relied upon by the plaintiff related to their maintenance and repair. It was held that inasmuch as the materials used cost the company only about 6% of the charge to the customer the materials were "merely incidental" to the service and therefore not taxable. But it was also indicated that the charge for the sign as specially constructed for the customer, whether paid for outright or under a rental contract, was subject to tax. The instant case is closer to the latter situation. By far the greater part of the skill and labor in creating an artificial limb is done prior to the sale so that it has then acquired the value created by such skill and labor.

It is quite generally true that "materials," considered separate and apart from "services," are not worth much. The value of raw materials depends upon their abundance or scarcity. It is usually very small in comparison to the products into which they are fashioned. It is the taking of ore from the mine or the tree from the forest and fabricating them into something useful which makes the end product desirable and therefore valuable. During the process of transformation through various stages the value is steadily enhanced in proportion to the expenditure of time, energy and skill thereon. An excellent if somewhat exaggerated example of this is the process by which a pound of iron ore, worth but a few cents, is mined, smelted, processed, tempered and fabricated into hair springs for watches worth thousands of dollars per pound. When one is sold its value is that of the finished product and not of the basic materials from which it was made. While less marked in degree, the same principle applies to the plaintiff's products.

1. Then taxed under Section 59–15–4, U.C.A.1953, now amended by Chap. 113, S.L.U.1959, to include services.

2. 4 Utah 2d 242, 291 P.2d 900.

These prosthetic devices vary in cost of production and sales price because of several differing factors, including the extent of the limb to be replaced. Plaintiff submitted breakdown of costs of several of them of which the following is typical:

| | | |
|---|---:|---:|
| Wood | $12.00 | |
| Plastic sponge | 5.00 | |
| Rawhide and glue | 5.00 | |
| Hardware | 15.00 | |
| Paint | 1.00 | |
| Leather | 7.50 | |
| Total cost of Materials | | $45.50 |
| Labor | $81.00 | |
| Overhead | 7.50 | $88.50 |
| Total Cost .............................. | | $134.00 |

It will be noted that the value of the materials is about one-half of the labor cost in fabricating the product, so that the materials represent roughly about one-third of the total cost. The same is true of the other examples submitted. Somewhat difficult to reconcile with the above is the plaintiff's testimony that he and his employees spend an average of 80 to 100 hours in connection with each artificial limb. However, as discussed above, the exact allocation of the cost of labor and materials is not controlling. It is the synthesis of both in the finished product which determines its sales value.

Plaintiff points to another aspect of his business in support of the contention that he is selling a service rather than a commodity. In addition to fashioning the prosthesis to the individual needs of each customer, it is necessary to train each for the use of his new limb. This, plaintiff claims, takes an average of about 48 hours for each new customer and about half that time for each old one, 20% of his business being of the former class, and 80% being of the latter. The 48 hours spent on new customers would thus comprise a relatively high proportion of personal service in connection with that 20% of his sales; and there would be a relatively lesser proportion of such time spent on the 80% of his sales which are to old customers and which require only 24 hours each.

On the basis of the figures above discussed the Commission concluded that the plaintiff's business is essentially that of selling personal property, and regarded the personal services rendered as merely incidental thereto. Notwithstanding the fact the statute providing for review by this court of decisions of the tax commission allows it to be made "both upon the law and the facts," [3] we nevertheless allow considerable latitude to the determination made by the Tax Commission and do not disturb it unless it is clearly erroneous.[4]

Plaintiff places some stress upon the nature of this product as a therapeutic device to assist those who are injured, and argues the reasonableness and desirability of ex-

3. Sec. 59-15-14, U.C.A.1953; Pacific Intermountain Express v. State Tax Commission, 7 Utah 2d 15, 316 P.2d 549.

4. Western Leather & Finding Co. v. State Tax Commission, 87 Utah 227, 48 P.2d 526.

empting it. We have no disposition to disagree with such sentiment but it is a matter to be addressed to the legislature. It it the responsibility of the commission and of the court to interpret and apply the statutes as enacted. In that connection it seems pertinent to observe that five states have expressly exempted such devices from sales taxes of personal property.[5] While this is not necessarily persuasive it may be taken as some indication that such devices are reasonably regarded as subject to the tax on sales of personal property unless there is an express exemption.

Affirmed. Costs to defendant.

WADE, HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

---

5. Florida, Michigan, Missouri, North Carolina and Rhode Island.