(No. 53024

FIRST NATIONAL BANK OF SPRINGFIELD, Appellee,
v. THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed March 31, 1981.—Rehearing*
*denied June 4, 1981.*

William J. Scott, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant.

Brown, Hay & Stephens, of Springfield (Harvey B. Stephens and Mark H. Ferguson, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

After an audit was conducted by defendant, the Department of Revenue, a deficiency tax assessment was asserted against the plaintiff, the First National Bank of Springfield. Liability for the deficiencies was alleged to be due under the Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, pars. 439.1 to 439.22), the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, pars. 440 to 453), and the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 24, par. 8–11–1). The plaintiff protested the assessment and, after a hearing, the Department issued a final deficiency assessment in the amount of $12,131.10, including penalty and interest. The final assessment constituted a final administrative decision. The plaintiff filed a complaint for review of the Department's final assessment in the circuit court of Sangamon County. Subsequently, the parties agreed to reduce the final assessment by the amount of taxes attributable to the sales by plain-

tiff of repossessed machinery. As a result, the only remaining dispute concerned the taxability under the Use Tax Act of five computer software programs purchased by plaintiff for use in Illinois. The circuit court decided, as a matter of law, that the plaintiff's purchase of computer software programs from out-of-State, nonresident suppliers were purchases of intangible personal property and therefore not subject to the use tax. The court set aside the Department's final assessment and entered judgment for the plaintiff. The Department moved for a direct appeal to this court under Rule 302(b) (73 Ill. 2d R. 302(b)). We allowed the Department's motion. We affirm.

In the computer industry, computer hardware is the tangible part of the machinery itself. Software denotes the information loaded into the machine and the directions given to the machine (usually through the media of punch cards, discs or magnetic tapes) as to what it is to do and upon what command. Software also may include counseling and expert engineering assistance furnished by the seller of software, as well as flow charts and instruction manuals. (See *Honeywell, Inc. v. Lithonia Lighting, Inc.* (N.D. Ga. 1970), 317 F. Supp. 406, 408.) The record in this case indicates that only magnetic tapes were delivered to the bank. There is no mention of any other materials accompanying the tapes.

There are two basic types of software programs. An operational program controls the hardware and actually makes the machine operate. It is fundamental and necessary to the functioning of the hardware. An applicational program is designed to perform specific functions once the programming information is fed into the computer. See *Commerce Union Bank v. Tidwell* (Tenn. 1976), 538 S.W.2d 405, 406.

In the instant case, the programs involved were applicational. Larry Thomson, an assistant vice president and manager of data processing at the plaintiff bank, testified

that the bank purchased five applicational programs from five different sources. The programs purchased were a customer information file from the National City Bank of Cleveland which would enable the bank to compile information from all of the bank's accounting ledgers and make it available at one source. Another program computed installment-loan payments, while a third program computed commercial-loan payments. A fourth program, a programmer's information and index program, is, according to Thomson, "commonly known as a librarian system whereby [the bank] could take other programs, such as the National City program, place it on that library and use that as a method of keeping track of the program, making changes to it." The last program, an audit program, contained a set of instructions used to accumulate requested information from all other programs. Thomson also testified that the programs were delivered on magnetic tapes. The programs were then taken off the magnetic tapes and put into a library, where necessary modifications were made to the programs to accommodate the bank's particular needs. After the information was removed from the tapes and stored elsewhere, the tapes could either be used again or discarded. Thomson stated further that those instructions could have been conveyed to the bank through discs, punch cards or over the telephone.

Section 3 of the Use Tax Act provides:

> "A tax is imposed upon the privilege of using in this State tangible personal property *** purchased at retail from a retailer." (Ill. Rev. Stat. 1977, ch. 120, par. 439.3.)

Thus, the issue in this case is whether computer software is tangible personal property and is therefore taxable under the Use Tax Act.

The plaintiff contends that the magnetic tapes in question here constituted intangible personal property, because they were, in essence, merely a means of con-

veying programming instructions. The plaintiff argues that software primarily represents intangible services and not tangible goods. The Department, on the contrary, contends that the physical qualities of the tapes predominate over the information contained on them. The Department compares the tapes to films, phonograph records and books. All three examples, the Department argues, represent the physical manifestation of intangible ideas and artistic achievement, yet all three are taxable as tangible personal property.

Taxing statutes are to be strictly construed, and their language is not to be extended or enlarged by implication beyond its clear import, but in cases of doubt such laws are construed most strongly against the government and in favor of the taxpayer. *Ingersoll Milling Machine Co. v. Department of Revenue* (1950), 405 Ill. 367, 373; *Mahon v. Nudelman* (1941), 377 Ill. 331, 335.

In our opinion, computer software, such as the instant magnetic tapes, is more properly characterized as intangible, than tangible, personal property. The Use Tax Act does not define the word "tangible," but this court abided by the following definition in *Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 511:

> "An examination of the statute in question and the objectives intended to be accomplished thereby clearly indicates that the General Assembly when using the word tangible in referring to personal property had in mind the ordinary and popularly understood meaning of such term as indicated in Webster's first definition thereof, which is 'Capable of being touched; also, perceptible to the touch; tactile; palpable.' Webster's New International Dictionary, Second Edition, Unabridged, 1946."

Yet the foregoing definition does not altogether resolve this issue.

In *Time, Inc. v. Hulman* (1964), 31 Ill. 2d 344, this court decided that magazines are tangible personal property and that the proceeds from their sale would be subject to the retailers' occupation tax were it not for an exclusion afforded to newspapers and other materials "such as" newsprint. (31 Ill. 2d 344, 351-52.) In discussing whether magazines are tangible personal property, it was said:

> "The sale of a magazine is essentially not different from the sale of a loaf of bread, or an automobile. While it is true that the utility or value of plaintiffs' magazines is in their content and not the paper and ink with which they are printed, the taxability of the transaction is not determined by weighing the value of the intangible properties of the item of sale, such as form, organization and design, against the value of its tangible properties, such as weight, size and texture. *The test is, where tangible personal property is transferred,* as the parties agree occurs in the transactions here involved, *whether the transfer is the substance of the transaction or merely incidental to a service.* In selling magazines by subscriptions, plaintiffs act as retailers of tangible personal property and as such are liable for retailers' occupation tax, if not otherwise exempt." (Emphasis added.) 31 Ill. 2d 344, 350.

In *Commerce Union Bank v. Tidwell* (Tenn. 1976), 538 S.W.2d 405, the Supreme Court of Tennessee held that computer software in the form of magnetic tapes or punch cards is intangible personal property and therefore not subject to that State's sales and use tax. The court reasoned that only information was being created and sold, "and the magnetic tapes which contain this information are only a method of transmitting these intellectual creations from the originator to the user. It is merely

incidental that these intangibles are transmitted by way of a tangible reel of tape that is not even retained by the user." 538 S.W.2d 405, 407.

The case of *First National Bank v. Bullock* (Tex. Civ. App. 1979), 584 S.W.2d 548, is nearly on all fours with this case. The bank in that case obtained licenses to use four programs, that is, software, which instructed the bank's computer to perform deposit and lending functions and process general accounting. The information was contained, as here, on magnetic tapes. The court stated that it would look to the "essence of the transaction" to determine whether the property purchased was tangible or intangible. (584 S.W.2d 548, 550.) The court held that, since the information on the tapes could have been communicated in several different ways, and the computer could even have been programmed over the telephone or by hand, the essence of the purchase was not the tapes, but the process which enabled the computer to function. The software was therefore in essence intangible personal property and the bank was not required to pay a sales and use tax for the licenses it purchased. (584 S.W.2d 548, 551.) That court was not persuaded to make a distinction between custom and pre-written software and, while the Department urges us to do so, we also refuse to draw such an artificial distinction.

This court has previously held that where a service of skill was rendered in the manufacture of a special milling machine for the particular and exclusive use of a purchaser, the sale of the product was not taxable where it was merely incidental to the service. (*Ingersoll Milling Machine Co. v. Department of Revenue* (1950), 405 Ill. 367, 372-73.) The instant case is of a similar vein. The plaintiff bank purchased, in substance, the means of programming its computer so that it could perform functions the bank needed to have performed. The bank did not desire to spend the money or time to formulate the pro-

grams through its own data-processing staff. Therefore it purchased instruction programs from other sources. It simply happened that, for the sake of convenience and easy handling, the programs were recorded on magnetic tapes. The tapes were certainly not the only medium through which the information could be transferred. In this way, the tapes differ from a movie film, a phonograph record or a book, whereby the media used are the only practicable ways of preserving those articles. Thus, while those articles and the tapes are similar in that they physically represent the transfer of ideas or artistic processes, a more significant distinction is that those articles are inseparable from the ideas or processes, whereas computer programs are separable from the tapes. Not only may software information be conveyed any number of ways, but it may even be copied off of the tapes and stored, using another medium. (See Bryant & Mather, *Property Taxation of Computer Software,* 18 N.Y.L.F. 59, 67 (1972).) In short, it is not the tapes which are the substance of the transaction, it is the information. We, therefore, hold that the sale of computer software in the instant transaction is, in substance, the transfer of intangible personal property and, as such, is not taxable under the Illinois Use Tax Act. Accord: *First National Bank v. Bullock* (Tex. Civ. App. 1979), 584 S.W.2d 548, 551; *Janesville Data Center, Inc. v. Wisconsin Department of Revenue* (1978), 84 Wis. 341, 347, 267 N.W.2d 656, 659; *Honeywell Information Systems, Inc. v. Maricopa County* (1978), 118 Ariz. 171, 173, 575 P.2d 801, 803; *State v. Central Computer Services, Inc.* (Ala. 1977), 349 So. 2d 1160, 1162; *Commerce Union Bank v. Tidwell* (Tenn. 1976), 538 S.W.2d 405, 408; *District of Columbia v. Universal Computer Associates, Inc.* (D.C. Cir. 1972), 465 F.2d 615, 618; *County of Sacramento v. Assessment Appeals Board No. 2* (1973), 32 Cal. App. 3d 654, 670-71, 108 Cal. Rptr. 434, 446, and the legislative treatment of

92

this issue, which subjects operational software to property taxation, but exempts applicational software: Cal. Revenue & Tax Code secs. 995, 995.1, 995.2 (West. Supp. 1974); see also *Honeywell, Inc. v. Lithonia Lighting, Inc.* (N.D. Ga. 1970), 317 F. Supp. 406, 411; but see *Greyhound Computer Corp. v. State Department of Assessments & Taxation* (1974), 271 Md. 674, 678-79, 320 A.2d 52, 55 (holding that only so much of software as consists of services is intangible and not taxable); see generally Martin, *The Revolt Against the Property Tax on Software: An Unnecessary Conflict Growing Out of Unbundling* (1974), 9 Suffolk Univ. L. Rev. 118; Bryant & Mather, *Property Taxation of Computer Software,* 18 N.Y.L.F. 59 (1972).

Accordingly, for the reasons stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.