# Chittenden Trust Company v. Harriet A. King, in Her Capacity as Commissioner of Taxes, State of Vermont

[465 A.2d 1100]

No. 82-294

Present: Hill, Underwood, Peck and Gibson, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed August 12, 1983

*Allan T. Fisher* of *Dinse, Allen & Erdmann,* Burlington, for Plaintiff-Appellee.

*John J. Easton, Jr.,* Attorney General, and *Paul P. Hanlon,* General Counsel, Department of Taxes, for Defendant-Appellant.

**Hill, J.** Pursuant to 32 V.S.A. § 9773, the Department of Taxes (Department) assessed a compensating use tax of $471 against the Chittenden Trust Company (Bank) for the purchase of a computer software tape valued at $15,700. The Bank appealed the assessment to the Tax Commissioner (Commissioner). 32 V.S.A. § 9777. After conducting a formal hearing, the Commissioner upheld the Department's assessment, whereupon the Bank petitioned the Chittenden Superior Court for relief. *Id.* § 9817; V.R.C.P. 74. The Commissioner's determination was subsequently reversed by the superior court, which reasoned that the tape was simply a tangible medium carrying intangible personal property and thus not subject to taxation under 32 V.S.A. § 9773. We reverse.

"Computer software" is a set of logical instructions designed to enable a computer to perform the computations, comparisons and sequential steps necessary to process and produce a certain desired output. The program purchased by the Bank enables its computer to keep records and perform various accounting functions in connection with its residential mortgage loan business. It was not created on an individual basis for the Bank; rather, it is of a standard design, purchased "off the shelf," and then modified for the Bank's particular needs through the selection of standardized options.

The programming information may be carried by a variety of means, including magnetic tapes, punch cards, telephone lines and personal programming. In the case at bar, the Bank purchased the program in the form of magnetic tape. The fifteen to twenty "man-years" needed to develop the "off the shelf" program accounts for almost its total value, since a blank magnetic tape may be purchased for approximately $15. Once the information is transferred into the computer's memory, the tape is of negligible value to the Bank, and may be reused, destroyed or returned to its original distributor.

The sole issue briefed for our consideration is whether the residential mortgage loan program purchased by the Bank constitutes "tangible personal property" as that term is defined in 32 V.S.A. § 9701 (7). The Department, citing our past decisions in *In re Merrill Theatre Corp. Sales & Use Tax,* 138 Vt. 397, 415 A.2d 1327 (1980), and *Mt. Mansfield Television, Inc.* v. *Vermont Commissioner of Taxes,* 133 Vt. 284, 336 A.2d 193

(1975), contends that the Bank's computer tape falls squarely within the statutory definition of "tangible personal property."

The primary objective in cases involving statutory construction is to give effect to the intention of the legislature. *Wetterau, Inc.* v. *Department of Taxes*, 141 Vt. 324, 327, 449 A.2d 896, 897 (1982) ; *Standard Register Co.* v. *Commissioner of Taxes*, 135 Vt. 271, 272–73, 376 A.2d 41, 42 (1977). We have consistently held that the plain and ordinary meaning of statutory language is presumed to be intended. *Wetterau, Inc.* v. *Department of Taxes, supra,* 141 Vt. at 327, 449 A.2d at 897. Hence, when a statute is unambiguous and susceptible of only one interpretation, courts must enforce the statute according to its terms. *In re Middlebury College Sales & Use Tax,* 137 Vt. 28, 31, 400 A.2d 965, 967 (1979).

The statutory scheme involved in this case is essentially as follows. The compensating use tax applies to any use of tangible personal property within the state, purchased at retail, and not subject to the state sales tax. 32 V.S.A. § 9773 (1) ; *In re Merrill Theatre Corp. Sales & Use Tax, supra,* 138 Vt. at 399, 415 A.2d at 1329. In 32 V.S.A. § 9701 (13), "use" is defined as the "exercise of any right or power over tangible personal property by the purchaser thereof . . . ." "Tangible personal property" is specifically defined as

> personal property which may be seen, weighed, measured, felt, touched or in any other manner perceived by the senses and shall include fuel and electricity, but shall not include rights and credits, insurance policies, bills of exchange, stocks and bonds and similar evidences of indebtedness or ownership.

*Id.* § 9701 (7). As noted in *Merrill,* the definition adds little to the ordinary concept of the term, and "carries stated exceptions for choses in action contained in documents, not here applicable." *Id.* at 400, 415 A.2d at 1329. Finally, a retail sale is described as "the sale of tangible personal property to any person for any purpose, other than for resale (except resale as a casual sale)." 32 V.S.A. § 9701 (5).

In view of the statutory scheme, we hold that the program tape purchased by the Bank falls within the definition of tangible personal property; the tape can be seen, weighed, meas-

ured and touched, and is not a right or credit. The Bank insists, however, that since the "focus of the transaction" was the transfer of intangible knowledge and information, rather than the tangible magnetic tape, a use tax should not be assessed. We disagree. Were we dealing with a service-type transaction as outlined in § 9701(6),* the Bank's use of the "focus of the transaction" test would have been appropriate, for that statute provides for such a distinction. Here, the tapes were purchased "off the shelf," and both parties agree that the transaction did not involve the type of personal service contemplated by § 9701(6). In short, there is nothing in the statutory scheme to indicate that § 9701(6)'s "focus of transaction" analysis should be applied to § 9701(7).

■ Given the dearth of statutory language compelling such an analysis in § 9701(7)'s definition of tangible personal property, and this Court's refusal to draw an intangible-tangible distinction when applying the definition, see *In re Merrill Theatre Corp. Sales & Use Tax, supra*, 138 Vt. at 400, 415 A.2d at 1329; *Mt. Mansfield Television, Inc.* v. *Vermont Commissioner of Taxes, supra*, 133 Vt. at 287, 336 A.2d at 195, we hold that the computer software tape purchased by the Bank constitutes "tangible personal property" for purposes of the state use tax. In so doing, we reject the Bank's attempts to distinguish a computer program tape from other taxable personal property such as films, videotapes, books, cassettes and records. In each, their value lies in their respective abilities to store and later display or transmit their contents. A computer software tape is no different.

■ It may well be that the Bank could have procured, by way of telephone or personal service, the same programming

---

* 32 V.S.A. § 9701(6) provides in pertinent part as follows:

Sales, selling or purchase: means any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor; except . . . advertising services and computer and data processing services where tangible personal property is transferred as part of such service transaction so long as no separate charge is made for the tangible personal property and so long as the value of the tangible personal property transferred is essentially an inconsequential element in relation to the value of the service transaction.

information so as to avoid a use tax. To base the tax consequences of a transaction on how it could have been structured "would require rejection of the established tax principle that a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred." *Commissioner* v. *National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 148 (1974). This we will not do. The Bank must accept the consequences of its choice to purchase the program in the form of a tape.

*The order of the Chittenden Superior Court is reversed; the determination of the Commissioner is reinstated.*