**MARK O. HAROLDSEN, INC., dba Marko Enterprises, a Utah corporation, Plaintiff and Appellant,**

v.

**STATE TAX COMMISSION, an agency of the State of Utah, Defendant and Appellee.**

No. 870468.

Supreme Court of Utah.

Nov. 27, 1990.

Steven D. Woodland and R. Stephen Marshall, Salt Lake City, for plaintiff and appellant.

R. Paul Van Dam, Stephen G. Schwendiman, and Michael F. Skolnick, Salt Lake City, for defendant and appellee.

STEWART, Justice:

Mark O. Haroldsen, Inc. (Haroldsen), appeals a decision of the tax division of the Third District Court affirming a Utah State Tax Commission order holding Haroldsen liable for $7,750, plus interest, for use taxes based on Haroldsen's lease of magnetic tapes and printed sheets containing customer mailing list information.

Haroldsen is engaged in the marketing of real estate information by selling books and tapes on real estate investment and conducting seminars. As a marketing technique, Haroldsen uses direct mail advertising to contact potential customers. Haroldsen purchases and leases mailing lists from mailing list brokerage companies and occasionally list owners. Haroldsen discusses with the broker the purpose for which a particular list is to be used—to market a product or to advertise a seminar. The broker assists Haroldsen in identifying the demographic characteristics of people most likely to be interested in his product and seminar. The broker then refines the raw mailing lists according to certain characteristics, or "selects," including age, gender, geographic locale, income level, family status, investment history, subscription to periodicals, etc. The owners and brokers grant permission to use a purchased or leased mailing list for only one mailing.[1]

Haroldsen received the mailing lists on either printed sheets of paper or magnetic tapes. The printed sheets are in the form of either pregummed labels or computer printouts with names and addresses. The pregummed labels are applied directly to envelopes. The computer printouts are converted into mailing labels by a machine that cuts the names from the sheet and applies gum to them. The magnetic tapes are used to generate computer printouts.

During a three-year period beginning July 1, 1979, Haroldsen purchased or leased mailing lists from seven brokerage companies and three list owners, all located outside Utah. Approximately 65 percent of the mailing lists were on printed sheets and 35 percent on magnetic tapes. The Commission found that the brokers compiled the mailing lists according to specific requirements determined by Haroldsen.

The Tax Commission ruled that the purchase and lease of the mailing lists, whether on printed sheets or magnetic tapes, was a "purchase or lease" of tangible personal property and assessed a use tax deficiency against Haroldsen. On review in the tax division of the district court, the parties submitted cross-motions for summary judgment. The district court ruled in favor of the Commission, finding that the generation of the lists involved little expertise, marketing skill, or analysis on the part of the broker and that the function of defining the parameters of the desired list was done primarily by the plaintiff. The court held that "[t]he service provided by the broker was incidental to the transaction to acquire the mailing lists" and that "[t]he mailing lists were the 'real object' of the transaction."

On this appeal, Haroldsen contends that (1) its purchase and lease of mailing lists is not a use of "tangible personal property" under the statute then in effect, Utah Code Ann. § 59–16–3 (1974); (2) its payments are primarily for services rather than for tangible personal property; and (3) § 59–16–3 is ambiguous and should therefore be strictly construed against the Commission and in favor of Haroldsen.

---

[1] To expose illegal mailings, an owner typically seeds a list with the names of some employees. If an employee receives more than one mailing,

Utah Code Ann. § 59–16–3 (1974)[2] imposes a use tax on the purchase or lease "of tangible personal property stored, used or otherwise consumed in this state...." When this case arose, the word "tangible" was not defined in the Code,[3] but the term "[t]angible personal property" was defined in the Utah Sales and Use Tax Acts and Regulations as follows:

> Tangible personal property embraces all goods, wares, merchandise, produce, and commodities, all tangible or corporeal things and substances which are dealt in or capable of being possessed or exchanged. It does not include real estate or any interest therein or improvements thereon nor does it include bank accounts, stocks, bonds, mortgages, notes and other evidence of debt, insurance certificates or policies, personal or governmental licenses. The term does not include water in pipes, conduits, ditches or reservoirs but does include water in bottles, tanks or other containers. Tangible personal property includes all other physically existing articles or things including property severed from real estate. A sales or use tax is imposed on the sale of tangible personal property.

Tax Regulation A12–02–S26 (1977). The regulation essentially adopts the ordinary, straightforward meaning of the term "tangible personal property," except for certain specific exceptions, none of which bear on the instant issue. The statute applies generally to all tangible property and, therefore, on its face applies to printed sheets and magnetic tapes. We do not find it ambiguous, as Haroldsen contends.

The issue here is whether the language "tangible personal property" applies to the lease or sale of mailing lists which require some personal service to compile and which are transferred to the lessee or buyer by printed sheets or magnetic tapes when the greater value is in the mailing list information, not in the physical medium used to convey the information.

## I.

At the outset, we note that with respect to the taxation of computer software, a somewhat analogous factual situation, a number of courts have held that if the "software was delivered to [the taxpayer] in a form which could be seen, weighed, measured, felt, and touched," it is tangible personal property and subject to the state's sales and use taxes.[4] *Citizens and S. Sys., Inc. v. South Carolina Tax Comm'n*, 280 S.C. 138, 142, 311 S.E.2d 717, 719 (1984). *See also Comptroller of the Treasury v. Equitable Trust Co.*, 296 Md. 459, 464 A.2d 248 (1983); *Chittenden Trust Co. v. King*, 143 Vt. 271, 465 A.2d 1100 (1983); Hanlon, *Computer Software and Sales Taxes: New Cases Take an Old Direction*, 2 J. State Tax. 315 (1984).

Haroldsen argues, however, that we should apply the "essence of the transaction" test to determine whether the sale or lease of the mailing lists is the sale or lease of personal property subject to taxation. This analysis focuses on the primary purpose of the transaction.

A number of courts have applied that type of analysis in holding that computer programs and data on magnetic tapes are the essence of the transaction and that the

---

the owner knows that an unauthorized mailing has occurred.

2. That section has been superseded by § 59–12–103 (1987) (as amended (Supp.1990)).

3. The current code provides a definition of "tangible personal property" that is similar to the definition in the regulations. Utah Code Ann. § 59–12–102(13) (Supp.1989); Utah Admin.R.R 865–19–26S (1989).

4. Legislatures and taxing agencies in other states have been active in enacting statutes and promulgating regulations which clearly specify how data processing, computer software, and related transactions should be taxed. Schrotenboer, *California Revises Computer Software Sales Tax Regulation*, 7 J. State Tax. 397 (1989); Panzer, *The Taxation of Data Processing and Computer-Assisted Information Services in New York State*, 4 J. State Tax. 67 (1985); Fenchel & Koeppel, *Computer Software and Sales Taxation*, 3 J. State Tax. 165 (1984); Politi, Babiarz & Ferrante, *Sales Taxation of Computer Software and Hardware: A Massachusetts Perspective*, 1 J. State Tax. 329 (1983).

tangible magnetic tapes are not. *E.g., State v. Central Computer Servs., Inc.,* 349 So.2d 1160, 1162 (Ala.1977); *James v. TRES Computer Sys., Inc.,* 642 S.W.2d 347, 349 (Mo.1982); *Credit Bureau of Miami County, Inc. v. Collins,* 50 Ohio St.2d 270, 273–74, 364 N.E.2d 27, 30 (1977); *First Nat'l Bank of Fort Worth v. Bullock,* 584 S.W.2d 548, 550 (Tex.Civ.App.1979); *Janesville Data Center, Inc. v. Wisconsin Dep't of Revenue,* 84 Wis.2d 341, 346–47, 267 N.W.2d 656, 658–59 (1978). Other courts, however, have held that the tangible medium used to transfer computer information or data is the essence of the transaction. *E.g., International Business Mach. Corp. v. Director of Revenue,* 765 S.W.2d 611, 613 (Mo.1989); *Financial Computer Servs., Inc. v. Lindley,* 70 Ohio St.2d 243, 245, 436 N.E.2d 1025, 1026 (1982).

This Court has applied an "essence of the transaction" analysis in sales and use tax cases to decide whether the personal service component of a transaction also involving tangible property was sufficient to make the transaction an essentially personal service transaction. *McKendrick v. State Tax Comm'n,* 9 Utah 2d 418, 347 P.2d 177 (1959); *Young Elec. Sign Co. v. Utah State Tax Comm'n,* 4 Utah 2d 242, 291 P.2d 900 (1955). *See also Thorne & Wilson, Inc. v. Utah State Tax Comm'n,* 681 P.2d 1237 (Utah 1984). In *McKendrick,* this Court held that the materials used in constructing artificial limbs were not "merely incidental" to the relatively substantial value of the services rendered in constructing and fitting the limbs and were taxable. But in *Young Electric Sign,* the Court held that replacement parts and materials used for the repair of electric signs were incidental to the personal services rendered and not subject to tax. Here, the district court held that the personal service provided by the broker "was incidental to the transaction" and that "the mailing lists were the 'real object' of the transaction."

■ The issue to be decided here is whether the lease or sale of knowledge, information, or data such as mailing lists is taxable as a personal property transaction when the information is conveyed by a tangible medium. The information on the gummed labels and tapes clearly has value to Haroldsen well beyond the cost of the tangible property used to convey the information, but that is not determinative. A Picasso painting is personal property, but its value is hardly the value of the canvas, the frame, and the paint. Any number of other examples prove the same point.

The Maryland Court of Appeals, in a carefully reasoned opinion, rejected the "essence of the transaction" analysis in deciding whether "canned" computer programs were tangible personal property. The court held that information should not be severed from the medium used to convey the information and that if conveyed on a tangible medium, the whole of the transaction, both information and computer tape, was taxable. In part, the court in *Equitable Trust* was persuaded by precedents governing similar transactions, such as the sale of books, motion picture films, video tapes, phonograph records, and audio cassette tapes, all of which are taxable as "tangible personal property." *Equitable Trust,* 296 Md. at 470–81, 464 A.2d at 254–59. The court stated:

A second concern is the precedent established for apparently comparable transactions. If the dominant purpose is to obtain knowledge, information or data which thereby results in severing the dominant purpose object from the physical medium of transfer, the analogy to books, motion picture films, video display discs, phonorecords and music tapes immediately comes to mind. In sales of the latter, the purchaser's dominant purpose ordinarily is to obtain the knowledge, information or data thereby conveyed. While the book is in human readable form, the other media are machine readable. A purchase of any of these information conveying media is within the imposition of the sales tax as tangible personal property. Such transactions escape taxation only if there is an applicable statutory exclusion or exemption.

464 A.2d at 254.

The point has been made that there is no other way of utilizing the content of a

book, film, or tape except by using the physical, tangible medium, whereas computer information can be stored in a computer memory and transmitted over telephone lines without ever assuming a tangible form. *See, e.g., First Nat'l Bank of Springfield v. Department of Revenue*, 85 Ill.2d 84, 90–92, 51 Ill.Dec. 667, 670–71, 421 N.E.2d 175, 178–79 (1981); *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405, 407–08 (Tenn.1976). *Equitable Trust* rejected that distinction and observed that a computer program is read by a computer, just as a phonograph record is played by a player or a film is shown by a projector. 464 A.2d at 261.

*Equitable Trust* held the lease of computer programs taxable. Thereafter, the Maryland Court of Special Appeals applied the same reasoning and analysis to hold subscription lists taxable in *Disclosure Information Group v. Comptroller of the Treasury*, 72 Md.App. 381, 530 A.2d 8 (Ct. Spec.App.1987). We agree with the reasoning in *Equitable Trust* and the result reached in *Disclosure Information Group*.[5]

Haroldsen relies on an "alternative means test" to argue that because the mailing lists can be conveyed in an alternative manner, in effect, by using intangible media, the essence of the transaction must be intangible. Information stored on computer tapes, such as mailing lists, can, of course, be transferred by alternative means, such as by tangible media like magnetic computer tapes, floppy diskettes, or punch cards, but also by intangible means such as direct transmission from one computer to another computer by electronic telecommunication. In support of the alternative means test, Haroldsen cites *Spencer Gifts, Inc. v. Taxation Division Director*, 182 N.J.Super. 179, 3 N.J.Tax 482, 440 A.2d 104 (1981), in which the parties stipulated that magnetic tapes were not essential to the delivery of the mailing list information because the information could have been transmitted by telephone

from one computer to another. The New Jersey court held: "Under such circumstances the form of [actual] delivery of the information should not control its taxability." *Spencer Gifts*, 182 N.J.Super. at 204, 440 A.2d at 118. *See also State v. Central Computer Servs., Inc.*, 349 So.2d 1160, 1162 (Ala.1977); *First Nat'l Bank of Springfield v. Department of Revenue*, 85 Ill.2d 84, 90–91, 51 Ill.Dec. 667, 670, 421 N.E.2d 175, 178 (1981); *Commerce Union Bank v. Tidwell*, 538 S.W.2d 405, 407–08 (Tenn.1976).

In our view, the possibility of an alternative means of transferring knowledge, information, or data by an intangible medium is not a determinative factor. We agree with the position taken in *Equitable Trust* and *Disclosure Information Group*. Computer tapes and gummed labels containing saleable information should not be deemed "intangible" because the information on them could be transferred without using a tangible medium.

We hold that the medium of transfer actually used is dispositive, not the possibility of using an alternative intangible medium that would render the transaction intangible and nontaxable. We agree with the observation in *Chittenden Trust Co. v. King*, 143 Vt. 271, 465 A.2d 1100 (1983):

It may well be that the Bank could have procured, by way of telephone or personal service, the same programming information so as to avoid a use tax. To base the tax consequences of a transaction on how it *could have been structured* "would require rejection of the established tax principle that a transaction is to be given its tax effect in accord with *what actually occurred and not in accord with what might have occurred*."

143 Vt. at 274–75, 465 A.2d at 1102 (emphasis added) (quoting *Commissioner v. National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 148, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974)). *See also Comptroller*

---

5. Haroldsen relies on *Fingerhut Products Co. v. Commissioner of Revenue*, 258 N.W.2d 606 (Minn.1977) and *Spencer Gifts, Inc. v. Taxation Division Director*, 182 N.J.Super. 179, 3 N.J.Tax 482, 440 A.2d 104 (1981), which held that mailing lists are not tangible personal property. We find the analysis in *Equitable Trust* more persuasive.

*of the Treasury v. Equitable Trust Co.,* 296 Md. 459, 484, 464 A.2d 248, 261 (1983); *Citizens and S. Sys., Inc. v. South Carolina Tax Comm'n,* 280 S.C. 138, 142, 311 S.E.2d 717, 719 (1984).

## II.

■ Haroldsen also argues that the labels and tapes are not taxable because there was a consequential or essential degree of personal service rendered by the brokers in helping Haroldsen to choose which lists to lease and which selects to utilize in modifying the lists and that the tangible personal property component, tapes and printed lists, was inconsequential to the overall transaction. *See generally Emery Indus., Inc. v. Limbach,* 43 Ohio St.3d 134, 539 N.E.2d 608 (1989); *Hasbro Indus., Inc. v. Norberg,* 487 A.2d 124 (R.I. 1985). *See also Old West Realty, Inc. v. Idaho State Tax Comm'n,* 110 Idaho 546, 716 P.2d 1318 (1986).

■ The tax treatment of computer programs presents similar issues and is analytically helpful, though not dispositive, in determining that the transactions at issue here are subject to taxation. *See Spencer Gifts, Inc. v. Taxation Div. Director,* 182 N.J.Super. 179, 200, 3 N.J.Tax 482, 440 A.2d 104, 115 (1981).[6] Taxability of programs turns on the type and amount of the personal services used in devising a computer program, in particular, whether the program is customized or not. Computer programs may be taxed, depending on whether they are "canned" or customized. *Measurex Sys., Inc. v. State Tax Assessor,* 490 A.2d 1192, 1196 (Me.1985); *Comptroller of the Treasury v. Equitable Trust Co.,* 296 Md. 459, 472–81, 464 A.2d 248, 255–59 (1983); *Hasbro Indus., Inc. v. Norberg,* 487 A.2d 124, 128 (R.I.1985); *Chittenden Trust Co. v. King,* 143 Vt. 271, 271–74, 465 A.2d 1100, 1100–01 (1983); *Pennsylvania & W. Va. Supply Corp. v. Rose,* 368 S.E.2d 101, 104 (W.Va.1988). *See also International*

*Business Mach. Corp. v. Director of Revenue,* 765 S.W.2d 611, 613 (Mo.1989); *Citizens and S. Sys., Inc. v. South Carolina Tax Comm'n,* 280 S.C. 138, 141, 311 S.E.2d 717, 719 (1984). *But see Commerce Union Bank v. Tidwell,* 538 S.W.2d 405, 406–08 (Tenn.1976); *First Nat'l Bank of Fort Worth v. Bullock,* 584 S.W.2d 548, 550–51 (Tex.Civ.App.1979). Personal service rendered to customize a program may render the transaction nontaxable. *Measurex Sys., Inc. v. State Tax Assessor,* 490 A.2d 1192, 1196 (Me.1985); *Maccabees Mut. Life Ins. Co. v. State, Dep't of Treasury,* 122 Mich.App. 660, 666, 332 N.W.2d 561, 563–64 (1983). That distinction is consistent with the "essence of the transaction" test.

As noted above, this Court has twice used the essence of the transaction test in considering whether the tangible materials used or the personal services rendered in a transaction constituted the essence of the transaction. *McKendrick v. State Tax Comm'n,* 9 Utah 2d 418, 347 P.2d 177 (1959); *Young Elec. Sign Co. v. Utah State Tax Comm'n,* 4 Utah 2d 242, 291 P.2d 900 (1955). Application of that test, however, does not lead to the conclusion that the transaction in the present case was essentially a personal service transaction. Although the brokers provided some service in selecting and modifying the lists, those services were not the essence of the transactions. Sellers often help buyers select the right product in taxable sales of tangible goods. What Haroldsen wanted was to receive the mailing lists. The district court's finding that the mailing lists were the "real object" of the transaction and that the personal services rendered were incidental is not arbitrary or unreasonable.

In sum, we hold that Haroldsen's lease or purchase of mailing lists on printed sheets and magnetic tapes is taxable as tangible personal property under

---

**6.** *See also District of Columbia v. Universal Computer Assoc., Inc.,* 465 F.2d 615, 619 (D.C.Cir. 1972); *State v. Central Computer Servs., Inc.,* 349 So.2d 1160, 1163 (Ala.1977); *Honeywell Info. Sys., Inc. v. Maricopa County,* 118 Ariz. 171, 173, 575 P.2d 801, 803 (Ct.App.1977); *First*

*Nat'l Bank of Springfield v. Dep't of Revenue,* 85 Ill.2d 84, 88, 51 Ill.Dec. 667, 669, 421 N.E.2d 175, 177 (1981); *Commerce Union Bank v. Tidwell,* 538 S.W.2d 405, 408 (Tenn.1976); *First Nat'l Bank of Fort Worth v. Bullock,* 584 S.W.2d 548, 551 (Tex.Civ.App.1979).

§ 59-16-3. The decision of the tax division of the district court is affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.