**SOUTH CENTRAL UTAH TELEPHONE ASSOCIATION, INC., Petitioner,**

v.

**AUDITING DIVISION OF THE UTAH STATE TAX COMMISSION, Respondent.**

No. 960433.

Supreme Court of Utah.

Dec. 30, 1997.

John M. Bradley, Thomas R. Barton, Salt Lake City, for petitioner.

Jan Graham, Attorney General, Brian L. Tarbet, Assistant Attorney General, Salt Lake City, for respondent.

RUSSON, Justice:

South Central Utah Telephone Association seeks review of a Utah State Tax Commission ruling that its purchases of software maintenance agreements and telephone transmission equipment were subject to sales tax. We affirm.

## BACKGROUND

South Central Utah Telephone Association (South Central) provides telephone services to individuals and businesses in rural areas of southern Utah and northern Arizona. South Central is a cooperative association owned by its customers. It challenges the levying of sales tax on its purchases of telephone equipment and software maintenance agreements.

### Telephone Equipment Purchases

As part of its provision of telephone services, South Central purchased telephone

transmission equipment to provide subscribers with access to a dial tone and other telephone services. These purchases included but were not limited to telephone switching equipment, telephone cables, radio equipment, and other tangible personal property. South Central initially paid sales tax on these purchases but later filed a claim for a refund.

In response, the Auditing Division of the Utah State Tax Commission audited South Central for the period April 1, 1989, through March 31, 1992. In July 1992, the Auditing Division determined that the purchases were subject to sales tax and therefore denied the refund. South Central appealed the assessment to the Tax Commission.

To fortify its position before the Tax Commission, South Central hired Douglas Goff, a tax consultant and former employee of the Tax Commission, who requested an advisory opinion of the Tax Commission. In that request, dated May 13, 1993, Goff described a fictitious scenario in which he attempted to create a fact pattern similar enough to South Central's circumstances that the reasoning of the advisory opinion would be applicable to the facts at hand. The letter set out circumstances in which a copy shop purchased computers that it in turn rented to its customers on an hourly basis. The letter then asked if such computer purchases would be subject to sales tax. In its advisory opinion dated August 20, 1993, the Tax Commission stated that such purchases would not be subject to sales tax because they were purchased for resale. According to Utah Code Ann. § 59–12–104(27), personal property purchased for resale is not subject to sales tax.

Armed with the advisory opinion, South Central challenged the sales tax on the equipment purchases, claiming that the equipment was purchased for resale and thus was exempt from sales tax. It claimed that the dial tone charges that appeared on the subscribers' monthly bill were rental payments from subscribers for the use of the telephone equipment.

In a ruling issued September 13, 1996, the Tax Commission upheld the imposition of sales tax on the equipment purchases. The Tax Commission held that in spite of South Central's characterization to the contrary. The Commission found that South Central did not lease or rent the use of the equipment to its subscribers but rather was the end-user, charging its customers for telephone service. It dismissed the persuasiveness of the advisory opinion because the "factual circumstances surrounding the photocopy business [described in the letter] were too dissimilar for the Advisory Opinion to have any applicability to the issues in this appeal." The Tax Commission also reasoned that the use of the equipment was a necessary part of the telephone service which the legislature specifically deemed taxable in Utah Code Ann. § 59–12–103(1).[1] Thus, the Tax Commission found that South Central was indeed the end-user and therefore liable for the sales tax.

South Central requests that this court review the Tax Commission's ruling that South Central's purchases of the telephone equipment were subject to sales tax. It argues that the purchases were exempt from sales tax pursuant to Utah Code Ann. § 59–12–104(27), which exempts from sales tax "property purchased for resale." South Central claims that it purchased the equipment with the intention of renting or leasing the equipment to its subscribers. It then points out that the statutory definition of "sale" (Utah Code Ann. § 59–12–102(19)(e)) includes rental or leasing contracts. Therefore, South Central argues, because it purchased the equipment with the intent to rent the equipment, the purchase of telephone equipment was not a taxable transaction because it was "purchased for resale" pursuant to section 59–12–104(27).

South Central characterizes itself as lessors of the equipment and its subscribers as

---

1. Utah Code Ann. § 59–12–103(1) in relevant part reads as follows:

(1) There is levied a tax on the purchaser for the amount paid or charged for the following:

...;

(b) amount paid to common carriers or to telephone or telegraph corporations, whether the corporations are municipally or privately owned, for;

...;

(ii) intrastate telephone service[.]

lessees. It presents the following factors as evidence of this relationship:

· (1) The equipment was used to provide a dial tone to its subscribers for telephone services.

(2) The "dial tone charge" that it bills its customers "represents a fee for the use/rental of South Central's Telephone system."

(3) For that fee, South Central's customers had possession and control of the equipment. Although South Central retained the property on its premises, South Central claims that the customer controls the equipment. Once a customer has accessed the dial tone, South Central does not control how that customer uses the system.

South Central argues that because it did not retain possession, control, or use of the equipment and because it charged a "use/rental" fee for such use, the relationship between South Central and its subscribers was as lessor/lessee.

Thus, with respect to the first issue, the sole question is whether South Central was indeed the end-user of the equipment or whether it purchased the equipment to rent to its subscribers. If South Central did rent the equipment to its customers, the purchases of such equipment were exempt from sales tax.

### Software Maintenance Agreements

During that same audit, the Auditing Division found an unrelated sales tax deficiency of $14,060.79 from South Central's purchases of software maintenance agreements.[2] It also assessed interest on that deficiency of $3,325.26 through August 28, 1992, and after-accrued interest.

South Central uses computer software to bill its customers for the services it provides.

To perform this function, it purchased "billing software" in 1983 from a software provider called Quintrex. After the initial purchase, South Central entered into a series of annual software maintenance agreements with Quintrex. Pursuant to these contracts, Quintrex agreed to provide 24–hour program maintenance that included, among other services, enhancements, materials, and telephone support for the use of the software. These contracts were not to cure any defect in the software but were for the potential need for future· modification and enhancement. During the audit period, South Central entered into three annual contracts for $5,280 (1990), $5,770 (1991), and $7,820 (1992).

The Auditing Division assessed sales tax on all three contracts purchased during the audit period. South Central also challenged this assessment before the Tax Commission. In its September 1996 ruling, the Commission upheld the imposition of a tax on the purchase of the software maintenance agreements, relying on Utah Administrative Code rules 865–19S–92 (rule 92) and 865–19S–78(H) (1992) (rule 78).[3] The Commission specifically relied on rule 92, which in part states, "Charges for program maintenance, consultation in connection with a sale or lease, enhancements, or upgrading of canned[4] or pre-written software are taxable." R865–19S–92(B). This rule, presumably in conjunction with rule 78, which states that extended warranties are taxable, is the basis on which the Tax Commission upheld the taxation of the software maintenance agreements.

Before this court, South Central argues that the Tax Commission erred in upholding the sales tax on the purchase of software maintenance agreements. It claims that the Tax Commission exceeded the authority

---

**2.** The Auditing Division also assessed a tax on South Central's charges to its customers for premise visits. On review, however, the Tax Commission determined that the visits were not · subject to tax and ordered that it be removed from the audit. This issue is not before us.

**3.** Now set forth in Utah Administrative Code R865–19S–78(D) (1996).

**4.** "Canned" software as opposed to "custom-written" software is considered tangible personal property and is therefore taxable. Utah Admin. Code R865–19S–92(B) (1992). " 'Canned computer software' or 'pre-written computer software' means a program or set of programs that can be purchased and used without modification and has not been prepared at the special request of the purchaser to meet their particular needs." *Id.* at R865–19S–92(A)(1).

granted in section 59–12–103(1)(g) of the Utah Code to tax "services for repairs and renovations of tangible personal property." South Central bases its challenge on two arguments. First, it claims that the software, once installed, is no longer tangible and, therefore, modifications thereto cannot be considered "repairs or renovations" of "*tangible* personal property." *Id.* South Central argues that because the canned software becomes intangible after installation, the modification of that software is not within the purview of section 59–12–103(1)(g) and thus was not a taxable transaction.

Second, South Central argues that the transactions in question are not for actual performance of software maintenance but only for potential future performance of that maintenance. The agreement to provide such service in the future is not, South Central contends, a taxable transaction in the present. It argues that the Tax Commission has overstepped its authority by taxing maintenance services that have not yet been, and may never be, performed. South Central argues that to the extent that rules 92 and 78 allow for such taxation, they must be deemed invalid for reaching beyond the statutory license to tax "repairs or renovations of *tangible* personal property." Utah Code Ann. § 59–12–103(1)(g) (emphasis added).

The issue before this court with respect to the software maintenance agreements is whether a contract for future potential modifications of installed canned software is subject to sales tax. This is essentially a question of the validity of rule 92, which taxes maintenance on installed canned software, and rule 78, which taxes the contractual amount paid for future potential services.

## STANDARD OF REVIEW

The Utah Code clearly sets out the standard for appellate review of Tax Commission rulings:

When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:

(a) grant the [tax] commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and

(b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in the statute at issue before the appellate court.

Utah Code Ann. § 59–1–610.

## ANALYSIS

### Software Maintenance Agreements

Tangible personal property is taxable pursuant to Utah Code Ann. § 59–12–103(1), which states:

(1) There is levied a tax on the purchaser for the amount paid or charged for the following:

(a) Retail sales of tangible personal property made within the state[.]

Prewritten or canned software is considered tangible personal property, and therefore, the purchase thereof is subject to sales tax. The first half of rule 92 explicitly states:

The sale, rental or lease of canned or prewritten computer software constitutes a sale of tangible personal property and is subject to the sales or use tax.

Utah Admin. Code R865–19S–92(B);[5] *see also Haroldsen, Inc. v. State Tax Comm'n,* 805 P.2d 176, 180 (Utah 1990). Neither party disputes the validity of this portion of the rule.

At issue, however, is not the taxation of purchases of canned software, but the taxation of contracts for future maintenance of software already purchased. Therefore, we must examine in the context of section 59–12–103(1)(g) whether it is appropriate to tax software maintenance and also whether it is appropriate to tax the amount paid for potential future services at the time of contracting. Both of these issues are questions of law, and therefore, we grant no deference to the Tax

5. Some text has since been added to rule 92. The version quoted herein was applicable to the transactions in question.

Commission's rulings with respect to the software maintenance agreements.

Whether charges for maintaining software are subject to sales tax is directly addressed in the latter half of rule 92(B), which states:

> Charges for *program maintenance*, consultation in connection with a sale or lease, *enhancements*, or upgrading of canned or prewritten software are taxable.

Utah Admin. Code R865–19S–92(B) (emphasis added). Because the agreements in question are entitled "Program *Maintenance* Agreements" and because the agreement specifically provides for, among other services, "maintenance" and "enhancements," the applicability of this rule to the facts at hand is undisputed. Indeed, South Central does not dispute the applicability of rule 92 to this case.

However, South Central does argue that "as applied, [rule 92] exceed[s] the scope of section 59–12–103(1)(g), and should be invalidated." Section 59–12–103(1)(g) provides for sales tax to be levied on the amount paid for "services for repairs or renovations of tangible personal property." South Central contends that canned software, though tangible before installation, becomes *intangible* once installed. Therefore, since section 59–12–103(1)(g) allows only for the taxation of repairs or renovations to "tangible property," South Central argues that as applied here, rule 92 exceeds the Tax Commission's statutory authority granted in section 59–12–103 because it taxes services for repairs or renovations on property which has become intangible.

When determining whether an administrative rule is valid, we grant the rule a presumption of validity. In *Eaton Kenway, Inc. v. Auditing Division,* 906 P.2d 882 (Utah 1995), we stated:

> In reviewing the validity of the administrative rule . . ., [w]e begin with the presumption that the Commission's rule is valid and reasonable. *State v. Utah Merit Sys. Council,* 614 P.2d 1259, 1263 (Utah 1980).

However, we will invalidate a rule that is not in harmony with its governing statute. *Id.* at 885–86.

In the language of *Eaton Kenway,* we must determine whether rule 92's taxing of modifications to software is "in harmony" with the authority granted in section 59–12–103(1)(g) to tax services on "tangible personal property." In essence, South Central's argument relies entirely upon the proposition that canned software becomes intangible once it has been installed. In other words, South Central argues that the installation of software changes its nature such that it is no longer tangible. We disagree.

A software program is a series of magnetic or electronic signals recorded and stored either internally (e.g., in the computer's hard drive or on the network) or externally (e.g., on floppy discs or magnetic tapes). When read by a computer, this program directs the computer through an arranged series of electronic signals to perform certain functions.

South Central purchased such a program from Quintrex to facilitate the billing of its subscribers. Because the software was "canned," we know that it was not prepared specifically for South Central's needs but was created and stored in some form of computer memory storage prior to sale or transfer. Upon its purchase, the program was then transferred to South Central. The arrangement of electronic signals that direct the reading computer to perform billing functions was transferred from Quintrex to South Central so that its computers could be directed by those same electronic signals to perform those same billing functions for South Central. The signals themselves were not changed or modified but were merely transferred from one form of storage media (Quintrex's) to another (South Central's).

Although perhaps difficult to comprehend and perceive at these microscopic levels, the electronic signals of installed software are tangible.[6] Software is information recorded

---

**6.** *Utah Code Ann. § 59–12–102(23)(a) defines "tangible personal property" as follows:*

(i) all goods, wares, merchandise, produce, and commodities;

(ii) all tangible or corporeal things and substances which are dealt in or capable of being possessed or exchanged;

. . .;

in a physical form which has a physical existence, takes up space on the tape, disc, or hard drive, makes physical things happen, and can be perceived by the senses. The purchaser of computer software neither desires nor receives mere knowledge but an arrangement of matter that will direct a computer to perform a particular function. *See South Central Bell Tel. Co. v. Barthelemy*, 643 So.2d 1240 (La.1994); *Comptroller of Treasury v. Equitable Trust Co.*, 296 Md. 459, 464 A.2d 248 (1983).

The nature of the billing program—the electronic signals—did not change after installation; only the media on which it was stored changed. The electronic signals are the same whether stored on Quintrex's floppy discs or on South Central's network. Before installation, the program is tangible, *see* Utah Admin. Code R865–19S–92(B), and it remains tangible after installation.

Thus, because taxation of repairs or renovations to tangible personal property is statutorily authorized and because installed software remains tangible, the repair or renovation of installed software is taxable. Therefore, rule 92 (particularly the latter half) is valid as applied because taxation of services performed on installed software is "in harmony" with section 59–12–103(1)(g), which taxes the amount charged for services on tangible personal property.

■■■ Having determined that rule 92(B) is valid, we must still determine whether rule 78(H), which taxes the purchase of extended warranty agreements,[7] is valid. Under *Eaton Kenway*, we examine whether rule 78(H)

is in harmony with section 59–12–103(1)(g), which levies a tax on the amount paid for "services for repairs or renovations of tangible personal property." Utah Code Ann. § 59–12–103(1)(g).

South Central claims that rule 78 is invalid because it taxes services that have not yet been performed or may never be performed. The authorizing statute, South Central argues, only authorizes taxation of services actually performed. In support of this argument, South Central cites *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132 (Tenn.1992). The issue in that case was whether the sale of extended warranty contracts on automobiles is consistent with the Tennessee statute which taxes "[t]he *performing* for a consideration of any repair services." *Id.* at 133 (emphasis added) (citing Tenn.Code Ann. § 67–6–102(22)(F)(iv)). The court held, "*Performing* repair services does not include the act of entering into a contractual commitment to *provide in the future* and on a contingent basis repair services." *Id.* at 135 (emphasis added). Accordingly, the court struck down the rule which included warranty contracts within the statutory language "repair services."

However, we find this case unpersuasive because it is distinguishable from the facts at hand. The statute at issue in *Covington Pike* is similar to the Utah statute except for one important difference. The Tennessee statute taxes the "*performing*" of services, whereas the Utah statute merely taxes the "services for repairs." It is clear from the language and the reasoning of its holding

---

(iv) all other physically existing articles or things, including property severed from real estate.

*Black's Law Dictionary* 1456 (6th ed.1991) defines "tangible" as "[h]aving or possessing physical form." Similarly, *Webster's 9th New Collegiate Dictionary* 1205 (1985) defines "tangible" as capable of being perceived, especially by touch.

The electronic signals of a software program are perceived through the use of a computer, much like a cassette deck reads the magnetic signals of a cassette tape. *See Haroldsen*, 805 P.2d at 180 (comparing computer tapes to phonograph records and motion picture films). If these electronic signals were sufficiently magnified, they could be perceived without the aid of a computer.

**7.** In relevant part, rule 78 states:

Sales of extended warranty agreements.

1. Sales of extended warranty agreements or service plans are taxable, and tax must be collected at the time of the sale of the agreement. The payment is considered to be for future repair, which would be taxable. Repairs made under an extended warranty plan are exempt from tax, even if the plan was sold in another state.

(a) Repair parts provided and services rendered under the warranty agreements or service plans are not taxable because the tax is considered prepaid as a result of taxing the sale of the warranty or service plan when sold.

Utah Admin. Code R865–19S–78(H) (1992).

that the court in *Covington Pike* relied heavily on the word "performing" found in the Tennessee statute. Because there is no word in the Utah statute like "performing" that serves to narrow the taxable event to the actual performance of the services, we are unpersuaded by South Central's argument that the statutory reach of section 59–12–103(1)(g) is so narrow as to exclude services for future repairs or renovations.

Indeed, since the legislature has deemed "services for repairs or renovations" taxable, the Tax Commission must determine a method of assessing that tax in the context of a warranty to provide future maintenance. In addition to the presumption of validity that accompanies agency rules, rule 78 is supported by sound policy. It taxes the repairs at a value that both parties have agreed upon (the contract purchase price) and assesses the tax only once. The alternative to taxing the warranty when purchased would be to tax the repairs as they occur. This would force the provider of service to assign a value to each particular service and force the recipient to be taxed on that amount. This would have to occur on every service rendered, whether it be a complete overhaul or a five-minute phone conversation. Rule 78 is an effective method of accomplishing the purpose of the statute. Thus, we find rule 78 valid because it is "in harmony" with section 59–12–103(1)(g).

## Equipment Purchases

Section 59–12–103 also governs the remaining issue: whether South Central's telephone equipment was "purchased for resale" and therefore exempt from sales tax. Although tangible personal property is taxable pursuant to Utah Code Ann. § 59–12–103(1), subsection 59–12–104(27) exempts "property purchased for resale in this state." Therefore, for South Central's purchases of telephone transmission equipment to be exempt from sales tax pursuant to subsection 59–12–104(27), they had to have been "purchased for resale."

South Central argues that it purchased the equipment to rent to its subscribers as they accessed South Central's telephone system. It contends that its monthly "dial tone charge" was actually a fee for the "use/rental" of the telephone equipment and system. It explains that once subscribers accessed the system after obtaining a dial tone, South Central had "no control" over the manner in which that equipment was used.

However, the Tax Commission entered the following finding of fact:

At all times at issue the Telephone Transmission Equipment remained in the possession of and under the control of [South Central]. [South Central] was the ultimate consumer and *end-user* of the equipment.

(Emphasis added.) This finding is dispositive of this issue because as the end-user South Central is liable for sales tax as the retail purchaser. Utah Code Ann. § 59–12–103(1); *see also Nucor Corp. v. State Tax Comm'n*, 832 P.2d 1294, 1297 (Utah 1992) (citing *Union Portland Cement Co. v. State Tax Comm'n*, 110 Utah 135, 170 P.2d 164 (1946) (wherein court determined that transaction was taxable because purchaser was end-user or "consumer")). When asked to review the Tax Commission's finding of fact, we apply a "substantial evidence" standard of review. Utah Code Ann. § 59–1–610. Therefore, we examine whether the Commission's ruling was supported by substantial evidence. *Alta Pacific Assocs. v. Utah State Tax Comm'n*, 931 P.2d 103, 110 (Utah 1997).[8] "Substantial evidence" is that quantum and quality of evidence that is sufficient to convince a reasonable person of a conclusion. *Cache County v. Property Tax Div.*, 922 P.2d 758, 767 (Utah 1996).

As challengers of the ruling, South Central bears the "burden of demonstrating that factual findings are erroneous." *Alta Pacific*

---

8. South Central argues that we should apply a correction of error standard of review to this issue. It cites a Utah Court of Appeals case and other cases from foreign jurisdictions for the proposition that where a court is "engaged in statutory construction as applied to the facts, a de novo standard is proper." However, this argument is without merit. The language of Utah Code Ann. § 59–1–610 is unambiguous and clearly applies to our review of the Tax Commission's ruling.

*Assocs.*, 931 P.2d at 110. To prevail under such a burden, South Central " 'must marshal all of the evidence supporting the findings and show that despite the supporting facts and in light of the conflicting evidence, the findings are not supported by substantial evidence.' " *Id.* (quoting *Beaver County v. State Tax Comm'n,* 916 P.2d 344, 355–56 (Utah 1996)).

■ South Central has simply not met this heavy burden. Marshaling the evidence in this case requires South Central to present all the evidence in the record that supports the Commission's ruling (that South Central was the end-user) and then, with evidence in opposition thereto, show that such finding is not supported by substantial evidence. However, South Central has not cited all the evidence in the record that supports the Commission's findings as required. Instead, it has merely set out evidence, some in support and some in opposition, and then argued that the Commission was in error. This is inadequate.

Because South Central has failed to marshal the evidence, we conclude that the Commission's ruling was supported by substantial evidence. *See Hales Sand & Gravel v. Audit Div.*, 842 P.2d 887, 893 (Utah 1992) (affirming Tax Commission's ruling because challenger had failed to marshal evidence). Notwithstanding South Central's argument to the contrary, there was no formal indication that a rental agreement existed. South Central concedes that its "bills, by-laws, and the South Central Utah Telephone Association, Inc. Local Access Tariff ... make no mention of a lease or rental agreement between South Central and its members." There is no evidence of any formal recognition by either party that a rental relationship existed.

Likewise, there are few, if any, substantive indications that such a relationship existed. The equipment remained on South Central's premises and in its possession. Although its customers exercised some "control" over the way they individually used the equipment, South Central controlled the actual equipment, its operation, and the availability of the equipment to its telephone service subscribers. Furthermore, the subscribers had no

contractual right to the equipment but only to the services that South Central provided through South Central's use of the equipment. Characterizing this relationship as a rental arrangement ignores both the form and the substance of that relationship. Accordingly, we affirm the Tax Commission's finding that South Central did not purchase the telephone equipment for resale but was the end-user. Therefore, South Central was liable for sales tax on the purchase price.

## CONCLUSION

For the foregoing reasons, we affirm the Tax Commission's ruling that South Central's purchases of telephone transmission equipment and software maintenance agreements were subject to sales tax.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.

STEWART, Associate C.J., concurs in the result.